## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Parkview Adventist Medical Center,** | ) | **Case No. 15-20442** |
| | ) | |
| Debtor. | ) | |
| ————————————————— | ) | |
| | ) | |
| **Parkview Adventist Medical Center,** | ) | |
| | ) | |
| Plaintiff, | ) | **Adv. No. 15-_____** |
| | ) | |
| v. | ) | |
| | ) | |
| **Central Maine Healthcare Corporation,** | ) | |
| **Central Maine Medical Center, and** | ) | |
| **Bridgton Hospital,** | ) | |
| | ) | |
| Defendants. | ) | |
| ————————————————— | ) | |

## COMPLAINT

Parkview Adventist Medical Center (the "<u>Debtor</u>" or "<u>Parkview</u>"), in its capacity as debtor-in-possession in the above-captioned bankruptcy case, brings this Complaint against Central Maine Healthcare Corporation (Central Maine Healthcare Corporation and its affiliates are hereinafter referred to as "<u>CMHC</u>"), Central Maine Medical Center (Central Maine Medical Center and its affiliates are hereinafter referred to as "<u>CMMC</u>"), and Bridgton Hospital ("<u>BHS</u>" and when combined with CMHC and CMMC, the "<u>CM Entities</u>").

This Complaint seeks (A) the avoidance of transfers to the CM Entities as fraudulent or preferential transfers under the Maine Uniform Fraudulent Transfer Act, codified in §§ 3571 *et seq.* of title 14 of the Maine Revised Statutes ("<u>MUFTA</u>"), and title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), including payment of double damages, authorized pursuant to

§ 3578 of MUFTA, in an amount not less than **$30 million** and the reconveyance of certain parcels of real estate in Brunswick, Maine; (B) the recharacterization or subordination of any debt obligation that Parkview may owe to the CM Entities; (C) damages for negligence and breach of fiduciary duty by CMHC, which served as Chief Executive Officer of Parkview at all times relevant to this Complaint; and (D) entry of the Court's declaratory judgment that CMHC, as a former officer of Parkview, is liable for certain debts that it claims are owed to it by Parkview and which were incurred in violation of title 13-B of the Maine Revised Statutes (the "Non-Profit Corporation Act").

## JURISDICTION AND VENUE

1.      Parkview filed for relief under the Bankruptcy Code on June 16, 2015 (the "Petition Date"), thereby commencing a Chapter 11 bankruptcy case before this Court.

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).

3.      Venue of this Chapter 11 case in this District is proper pursuant to 28 U.S.C. § 1409(a).  Venue of this adversary proceeding in this District is proper pursuant to 28 U.S.C. § 1409(b).

4.      This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (E), (F) and (H). This adversary proceeding is a core matter over which the Bankruptcy Court may exercise jurisdiction in accordance with the provisions of the foregoing sections of title 28 of the United States Code.

5.      The Debtor consents to the entry of final orders by the Bankruptcy Court in this adversary proceeding, subject to review on appeal in accordance with applicable federal laws and rules.

## PARTIES

6.      The Debtor is a non-profit corporation organized under the laws of the State of Maine operating a faith-based community hospital located in Brunswick, Maine.  Its mission is to support physical, emotional and spiritual wellness of its patients.

7.      CMHC is a non-profit corporation organized under the laws of the State of Maine and is a holding company for health care providers, including CMMC.  It has a principal place of business in Lewiston, Maine.

8.      CMMC is a non-profit corporation organized under the laws of the State of Maine operating a community hospital located in Lewiston, Maine, and with a principal place of business in Lewiston, Maine.  CMMC is a subsidiary or affiliate of CMHC.

9.      BHS is a non-profit corporation organized under the laws of the State of Maine operating a community hospital located in Bridgton, Maine, and with a principal place of business in Bridgton, Maine.  BHS is a subsidiary or affiliate of CMHC.

10.      The CM Entities may have other affiliates who were recipients of avoidable transfers and, upon their identification during discovery, Parkview shall seek leave to add any such affiliates as party-defendants in the adversary proceeding commenced by the filing of this Complaint.

## FACTS

11.      On or about February 26, 2008, Parkview executed and delivered a letter agreement (the "LOI") to CMHC pursuant to which Parkview and CMHC agreed to pursue a hospital affiliation in which CMHC was to become the sole corporate member of Parkview.

12.     As a result of the LOI and after its execution, CMHC was in a position to exercise substantial control and influence over the affairs of Parkview and, in fact, exercised such control and influence.

13.     Upon information and belief, Parkview was financially distressed at the time that it entered into the LOI, in that, without limitation, it was insolvent and unable to pay its debts as they became due.

14.     On or about April 25, 2008, the Debtor entered into a purported loan transaction with CMHC pursuant to which CMHC transferred $5.6 million to Parkview, the repayment of which was purportedly governed by a promissory note of the same date, and secured by mortgages and security interests in substantially all of the assets of the Debtor (the "2008 Loan").

15.     The Board of Directors of Parkview (the "Board") (A) did not adopt a resolution recommending that Parkview's members (the "Members") approve granting mortgages and/or security interests in Parkview's assets to CMHC to secure the 2008 Loan, and (B) did not direct that any pledge of Parkview's assets to CMHC to secure the 2008 Loan be submitted to a vote at a meeting of Members entitled to vote thereon.

16.     No notice was given to the Members of any meeting of Members, the purpose, or one of the purposes, of which would be to consider a mortgage and/or pledge of substantially all of Parkview's assets to CMHC to secure the 2008 Loan.

17.     No meeting was held at which the Members were asked to vote, or in fact voted, to approve a mortgage and/or pledge of substantially all of Parkview's assets to CMHC to secure the 2008 Loan.

18.     As of the date of this Complaint, the Members have never adopted any vote, resolution or other form of consent, pursuant to which a majority of the Members have actually

approved or ratified, in a meeting duly called and held, or otherwise conducted, the grant of a mortgage, security agreement, or pledge of substantially all of Parkview's assets to CMHC to secure the 2008 Loan.

19.     By reason of the failure of the Members to approve the 2008 Loan and the grant of security for the 2008 Loan, the mortgages and security interests granted to secure the 2008 Loan are unlawful, unenforceable and invalid.  As a result, to the extent that the 2008 Loan represents a valid and enforceable debt obligation of Parkview to CMHC, it is unsecured.

20.     In connection with the 2008 Loan, the Debtor executed and delivered to CMHC that certain Promissory Note Demand Advancing Term Note dated April 25, 2008, in the original principal amount of $5.6 million (the "Note").

21.     In the Note, the Debtor made certain covenants for the benefit of CMHC (the "Covenants") that were effective during the term of the Note, as set forth in ¶¶ (a) through (h) on page 5 of the Note.

22.     The Covenants, combined with the conduct and actions of Parkview and CMHC following execution and delivery of the Note, effectively granted CMHC control over Parkview's cash management system, restricted Parkview's ability to incur debt, and placed restrictions on Parkview's ability to contract with trade vendors or others.

23.     The Debtor and CMHC entered into four extension agreements with respect to the Note pursuant to which, cumulatively, the term with respect to the Note was enlarged to and including September 16, 2018, which is the current maturity date of the Note.

24.     By virtue of the aforementioned extensions, the Covenants remained in effect at all times relevant to this Complaint from and after April 25, 2008, and until the Petition Date.

25.     Further, by virtue of the aforementioned extensions, CMHC benefited from the control and influence it exerted over Parkview, to the detriment of Parkview, including as a result of the Covenants as well as other unfavorable lending terms.

26.     On or about April 14, 2009, the Debtor and CMHC entered into that certain Administrative Support And Service Agreement (the "ASA").

27.     Pursuant to the ASA, CMHC, as a corporate entity, became Parkview's Chief Executive Officer ("CEO").  Without limitation of its role as Chief Executive Officer, in the ASA, CMHC agreed to provide administrative support services to Parkview and provide hospital leadership through a qualified hospital administrator and qualified finance officer to be hired by and paid by CMHC.  In addition, pursuant to the ASA, CMHC agreed to provide, without limitation, the following services: (A) assistance with licensing and permitting requirements; (B) preparation of a business plan for Parkview, including management goals and objectives and methods to achieve them; (C) budget preparation; (D) supervision of accounting procedures; (E) budget implementation; (F) deposit of funds and disbursement of funds into and from Parkview's operating account; and (G) use of funds in Parkview's operating account to pay liabilities, including alleged liabilities to CMHC.  CMHC also was required to provide some or all of the foregoing services, or similar services (exclusive of the provision of a hospital administrator and financial officer), pursuant to other contracts by and between Parkview and CMHC, including, without limitation, pursuant to that certain Billing Services Management Agreement dated January 1, 2010, and all amendments thereto or extensions thereof (collectively, the "BSMA").  Collectively, such services and obligations to be performed by CMHC pursuant to the ASA or BSMA shall be referred to herein as the "ASA Services."

28.     At all relevant times from and after April 14, 2009, until the Petition Date, CMHC did, in fact, serve as CEO and provide the foregoing ASA Services.

29.     At all relevant times prior to the Petition Date, such hospital administrators, all employees of CMHC, served as President of Parkview ("<u>President</u>" or "<u>Presidents</u>").

30.     At all relevant times prior to the Petition Date, financial officers, all employees of CMHC, served as Chief Financial Officer ("<u>CFO</u>" or "<u>CFOs</u>") of Parkview.

31.     At all relevant times prior to the Petition Date, the President and CFO of Parkview were hired by, compensated by, and served as employees of CMHC, subject to performance review and evaluation by CMHC.

32.     Each person serving as President was a liaison between Parkview and CMHC and was required to "act on behalf of CMHC to facilitate the performance by CMHC of its administrative duties" under the ASA.  *See* ASA, § 2.03.

33.     Under the ASA, Parkview was required to pay an administrative fee and other charges to CMHC for provision of the ASA Services.  All payments for such ASA Services were made in arrears.

34.     There were other contracts or agreements between Parkview and CMHC pursuant to which payments were made by Parkview to CMHC.  Such payments were made in arrears.

35.     Parkview has also entered into certain contracts or agreements with CMMC pursuant to which payments were made by Parkview to CMMC.  All of such payments were made in arrears.

36.     At all times relevant to this Complaint, CMHC was in control of Parkview and/or served as an officer of Parkview.

37.     By virtue of the ASA and/or the BSMA and on and after the execution of each such agreement and until the Petition Date, CMHC was an affiliate of Parkview, within the meaning of § 3572 of MUFTA and § 101 of the Bankruptcy Code.

38.     By virtue of the Covenants and provisions of the 2008 Loan and the ASA and/or BSMA, and the performance by CMHC and Parkview of the provisions thereof, CMHC was, at all times commencing with the closing of the 2008 Loan and continuing through the Petition Date, in control of Parkview.

39.     CMMC is an affiliate of CMHC, within the meaning of § 3572 of MUFTA.

40.     At all times relevant to this Complaint, CMHC was an insider of Parkview, within the meaning of MUFTA and the Bankruptcy Code, because, without limitation, (A) CMHC was an officer of Parkview, (B) CMHC was in control of Parkview, (C) CMHC was an affiliate of Parkview, and/or (D) CMHC was the managing agent of Parkview.

41.     At all times relevant to this Complaint, CMMC was an insider of Parkview because it was an affiliate of CMHC.

42.     Upon information and belief, in the six years prior to the Petition Date, Parkview made transfers totaling not less than **$10,515,362.78** to the CM Entities, allegedly on account of the following: (1) the Note (the "Note Transfers"); ASA Services, including under the BSMA (the "ASA Services Transfers"); other contracts or agreements with CMHC (the "Other CMHC Transfers" and together with the Note Transfers and ASA Services Transfers, the "CMHC Transfers"); contracts or agreements with CMMC (the "CMMC Transfers"); other contracts or agreements with BHS (the "BHS Transfers").

43.     On or about August 16 or 19, 2013, Parkview transferred certain parcels of real property located in Brunswick, Maine (the "2013 Real Estate") to CMHC (the "2013 RE

Transaction"). Upon information and belief, such 2013 Real Estate had a fair market value of approximately **$5,200,000.00** at the time of the 2013 RE Transaction.

44. Upon information and belief, at the time of each of the CMHC Transfers, the CMMC transfers, the BHS Transfers, and the 2013 RE Transfer, Parkview was (A) insolvent, (B) unable to pay its debts as they became due, and/or (C) undercapitalized.

## **COUNT I**

### **(Debtor v. CMHC)**

**(Avoidance And Recovery Of Fraudulent Transfers Made To An Insider Pursuant To § 3576(2) Of MUFTA And § 544(b) Of The Bankruptcy Code)**

45. Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 44 set forth above in this Complaint.

46. The Note Transfers were transfers on account of an antecedent debt within the meaning of § 3576(2) of title 14 of the Maine Revised Statutes ("MUFTA").

47. The ASA Services Transfers were transfers on account of antecedent debts within the meaning of § 3576(2) of MUFTA.

48. The Other CMHC Transfers were transfers on account of antecedent debts within the meaning of § 3576(2) of MUFTA.

49. The 2013 RE Transfer was a transfer on account of antecedent debts within the meaning of § 3576(2) of MUFTA.

50. The CMHC Transfers and 2013 RE Transfer were transfers to an insider, namely CMHC.

51. Upon information and belief, Parkview was insolvent at the time that the CMHC Transfers and 2013 RE Transfers were made.

52.     Because, among other things, CMHC was Parkview's CEO, was in control of Parkview, or served as its managing agent at the time that the CMHC Transfers and 2013 RE Transfers were made, CMHC had reasonable cause to believe that Parkview was insolvent at such times.

53.     Moreover, in connection with due diligence conducted by CMHC following the 2008 Loan with respect to a proposed affiliation between Parkview and CMHC, on August 29, 2008, CMHC's attorneys reported to CMHC that "[w]e have reviewed audited financial statements and auditors' comments for the last five years, through the fiscal year ending December 31, 2007.  The most recent audit raised questions about PAMC's sustainability as a 'going concern'.  Analysis of the projected revenues and expenses of PAMC, and its financial viability as a 'going concern', are beyond the scope of this report."   Letter from Michael R. Poulin, attorney with Skelton, Tainter & Abbott, to Charles T. Orne, Executive Vice President and Treasurer of CMHC, dated August 28, 2008, re: Report on Parkview Adventist Medical Center.

WHEREFORE, the Debtor respectfully requests that the Court (a) determine that the CMHC Transfers and the 2013 RE Transfer were fraudulent transfers within the meaning of § 3576(2) of MUFTA; (b) award damages to Parkview in the amount of twice the value of the CMHC Transfers and the 2013 RE Transfer pursuant to § 3578(1)(C)(3) of MUFTA and § 550(a) of the Bankruptcy Code; (c) in addition, or in the alternative to an award of damages with respect to the 2013 RE Transfer, avoid the 2013 RE Transfer; (d) order CMHC to pay Parkview's attorneys' fees and costs in connection with this claim; and (e) grant such further and additional relief as the Court deems just and proper.

## COUNT II

### (Debtor v. CMHC, CMMC, and BHS)

### (Avoidance And Recovery Of Fraudulent Transfers Made With Actual Intent To Hinder or Delay Other Creditors Of Parkview Pursuant To § 3575(1)(A) Of MUFTA And § 544(b) Of The Bankruptcy Code)

54.     Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 53 set forth above in this Complaint.

55.     Upon information and belief, the Note Transfers, ASA Transfers, Other CMHC Transfers, BHS Transfers, and 2013 RE Transfer and CMMC Transfers were made with actual intent to hinder or delay other creditors of Parkview.  Without limiting the generality of the foregoing, CMHC exercised its control over Parkview to cause the foregoing transfers to be made in order to assure payment of Parkview's alleged obligations to the CM Entities, rather than to other creditors of Parkview.

WHEREFORE, the Debtor respectfully requests that the Court (a) determine that the CMHC Transfers, the 2013 RE Transfer, the BHS Transfers, and the CMMC Transfers were fraudulent transfers within the meaning of § 3575(1)(A) of MUFTA; (b) award damages to Parkview in the amount of twice the value of such transfers, pursuant to § 3578(1)(C)(3) of MUFTA and § 550(a) of the Bankruptcy Code; (c) in addition, or in the alternative to an award of damages with respect to the 2013 RE Transfer, avoid the 2013 RE Transfer; (d) order the CM Entities to pay Parkview's attorneys' fees and costs in connection with this claim; and (e) grant such further and additional relief as the Court deems just and proper.

## COUNT III

### (Debtor v. CMMC)

### (Avoidance And Recovery Of Fraudulent Transfers Made To An Insider Pursuant To § 3576(2) Of MUFTA And § 544(b) Of The Bankruptcy Code)

56.    Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 55 set forth above in this Complaint.

57.    The CMMC Transfers were transfers on account of antecedent debts within the meaning of § 3576(2) of MUFTA.

58.    The CMMC Transfers were transfers to an insider, namely CMMC.

59.    Upon information and belief, Parkview was insolvent at the time that the CMMC Transfers were made.

60.    As an affiliate of CMHC, CMMC had reasonable cause to believe that Parkview was insolvent at the time that some or all of the CMMC Transfers were made.

WHEREFORE, the Debtor respectfully requests that the Court (a) determine that the CMMC Transfers were fraudulent transfers within the meaning of § 3576(2) of MUFTA; (b) award damages to Parkview in the amount of twice the value of the CMMC Transfers pursuant to § 3578(1)(C)(3) of MUFTA and § 550(a) of the Bankruptcy Code; (c) order CMMC to pay Parkview's attorneys' fees and costs in connection with this action; and (d) grant such further and additional relief as the Court deems just and proper.

## COUNT IV

### (Debtor v. BHS)

### (Avoidance And Recovery Of Fraudulent Transfers Made To An Insider Pursuant To § 3576(2) Of MUFTA And § 544(b) Of The Bankruptcy Code)

61.    Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 60 set forth above in this Complaint.

62.     The BHS Transfers were transfers on account of antecedent debts within the meaning of § 3576(2) of MUFTA.

63.     The BHS Transfers were transfers to an insider, namely BHS.

64.     Upon information and belief, Parkview was insolvent at the time that the BHS Transfers were made.

65.     As an affiliate of BMHC, BHS had reasonable cause to believe that Parkview was insolvent at the time that some or all of the BHS Transfers were made

WHEREFORE, the Debtor respectfully requests that the Court (a) determine that the BHS Transfers were fraudulent transfers within the meaning of § 3576(2) of MUFTA; (b) award damages to Parkview in the amount of twice the value of the BHS Transfers pursuant to § 3578(1)(C)(3) of MUFTA and § 550(a) of the Bankruptcy Code; (c) order BHS to pay Parkview's attorneys' fees and costs in connection with this action; and (d) grant such further and additional relief as the Court deems just and proper.

## COUNT V

### (Debtor v. CMHC, CMMC, and BHS)

**(Avoidance And Recovery Of Preferential Transfers Made In The 90 Day Period Preceding The Petition Date Pursuant To § 547(b) Of The Bankruptcy Code)**

66.     Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 65 set forth above in this Complaint.

67.     Upon information and belief, in the 90 day period preceding the Petition Date, Parkview made transfers to CMHC (the "CMHC 90 Day Transfers").

68.     Upon information and belief, in the 90 day period preceding the Petition Date, Parkview made transfers to CMMC (the "CMMC 90 Day Transfers").

69.     Upon information and belief, in the 90 day period preceding the Petition Date, Parkview made transfers to BHS (the "BHS 90 Day Transfers") and together with the CMHC 90 Day Transfers and CMMC 90 Day Transfers, the "90 Day Transfers").

70.     The 90 Day Transfers were made on account of antecedent debts purportedly owed by Parkview prior to such transfers having been made.

71.     The 90 Day Transfers were made at a time when, upon information and belief, Parkview was insolvent and presumed to have been insolvent.

72.     By virtue of such 90 Day Transfers, each of the CM Entities received more than either would have received if the transfers had not been made, Parkview were liquidated pursuant to chapter 7 of the Bankruptcy Code, and the CM Entities had received payment in accordance with the provisions of chapter 7 of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that the Court  (a) determine that the 90 Day Transfers were preferential transfers within the meaning of § 547(b) of the Bankruptcy Code; (b) award damages to Parkview in the amount of the value of the 90 Day pursuant to § 550(a) of the Bankruptcy Code; (c) in addition, or in the alternative to an award of damages with respect to the 90 Day Transfers, avoid the 90 Day Transfers; (d) order the CM Entities to pay Parkview's attorneys' fees and costs in connection with this claim; and (e) grant such further and additional relief as the Court deems just and proper.

**COUNT VI**

**(Debtor v. CMHC, CMMC, and BHS)**

**(Avoidance And Recovery Of Preferential Transfers Made Between 90 Days And One Year Preceding The Petition Date Pursuant To § 547(b) Of The Bankruptcy Code)**

73.     Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 72 set forth above in this Complaint.

74.     Upon information and belief, between 90 days prior to the Petition Date and one year prior to the Petition Date (the "Insider Preference Period"), Parkview made transfers to CMHC (the "CMHC Insider Transfers").

75.     Upon information and belief, during the Insider Preference Period, Parkview made to CMMC (the "CMMC Insider Transfers").

76.     Upon information and belief, during the Insider Preference Period, Parkview made transfers to BHS (the "BHS Insider Transfers" and together with the CMHC Insider Transfers and the CMMC Insider Transfers, the "Insider Transfers").

77.     The Insider Transfers were made on account of antecedent debts purportedly owed by Parkview.

78.     The Insider Transfers were made at a time when Parkview was insolvent.

79.     Each of CMHC, CMMC, and BHS were insiders of Parkview, within the meaning of the Bankruptcy Code, at the times when the Insider Transfers were made.

80.     By virtue of such Insider Transfers, each of the CM Entities received more than either would receive if this was a case under chapter 7 of the Bankruptcy code, the Insider Transfers had not been made, and the CM Entities each received payment on account of the obligations giving rise to such transfers to the extent provided by the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that the Court (a) determine that the Insider Transfers were preferential transfers within the meaning of § 547(b) of the Bankruptcy Code; (b) award damages to Parkview in the amount of the value of the Insider Transfers pursuant to § 550(a) of the Bankruptcy Code; (c) in addition or in the alternative to an award of damages with respect to the Insider Transfers, avoid the Insider Transfers; (d) order the

CM Entities to pay Parkview's attorneys' fees and costs in connection with this claim; and (e) grant such further and additional relief as the Court deems just and proper.

## COUNT VII

### (Debtor v. CMHC, CMMC, and BHS)

### (Avoidance And Recovery Of Fraudulent Transfers Pursuant To § 548(a)(1)(A) Of The Bankruptcy Code)

81.     Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 80 set forth above in this Complaint.

82.     Upon information and belief, in the two year period preceding the Petition Date, Parkview made transfers to CMHC (the "CMHC Two Year Transfers").

83.     In addition, Parkview made the 2013 RE Transfer to CMHC within the two year period prior to the Petition Date.

84.     Upon information and belief, in the two year period preceding the Petition Date, Parkview made transfers to CMMC (the "CMMC Two Year Transfers").

85.     Upon information and belief, in the two year period preceding the Petition Date, Parkview made transfers to BHS (the "BHS Two Year Transfers" and together with the CMHC Two Year Transfers and CMMC Two Year Transfers, the "Two Year Transfers").

86.     Upon information and belief, Parkview made such Two Year Transfers and the 2013 RE Transfer with actual intent to hinder or delay then-present or future creditors.  Without limiting the generality of the foregoing, CMHC and its affiliates, CMMC and BHS, exercised their control over Parkview to cause the foregoing transfers to be made in order to assure payment of Parkview's alleged obligations to the CM Entities, rather than to other creditors of Parkview.

87.     Such Two Year Transfers and the 2013 RE Transfer are avoidable fraudulent transfers under § 548(a)(1)(A) of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that the Court (a) determine that the Two Year Transfers and 2013 RE Transfer were fraudulent transfer within the meaning of § 548(a)(1)(A) of the Bankruptcy Code; (b) award damages to Parkview in the amount of the value of the Two Year Transfers and 2013 RE Transfer pursuant to § 550(a) of the Bankruptcy Code; (c) in addition or in the alternative to an award of damages with respect to such transfers, avoid such transfers; (d) order the CM Entities to pay Parkview's attorneys' fees and costs in connection with this claim; and (e) grant such further and additional relief as the Court deems just and proper.

## COUNT VIII

### (Debtor v. CMHC)

**(Recharacterization Or Equitable Subordination Of The 2008 Loan Pursuant To § 510(c) Of The Bankruptcy Code)**

88.     Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 87 set forth above in this Complaint.

89.     In light of the substantial influence and/or control exercised by CMHC following execution and delivery of the LOI, and the control over Parkview obtained pursuant to the Covenants and the 30-day demand feature in the Note, and/or by virtue of the control over Parkview obtained by CMHC pursuant to the ASA and/or BSMA, some or all of the debt owed to CMCH pursuant to the Note and under any other agreement by, among, or between Parkview and CMHC should be recharacterized and treated as capital contributions.

90.     Alternatively, under the principles of equitable subordination and pursuant to § 510 of the Bankruptcy Code, the claims of each of the CM Entities, to the extent such claims

are or become allowed claims, should be equitably subordinated to the claims of all other creditors of Parkview for the reasons set forth immediately above, among others.

WHEREFORE, the Debtor respectfully requests that the Court enter its order (a) determining that all claims of CMHC should be recharacterized as capital contributions; (b) in the alternative, determining that CMHC's claims, to the extent that such claims are or become allowed claims, are equitably subordinated to the claims of all other creditors of Parkview; (c) determining that CMMC's claims, to the extent that they are or become allowed claims, are equitably subordinated to the claims of all other creditors of Parkview; and (d) granting such further and additional relief as the Court deems just and proper.

## COUNT IX

### (Debtor v. CMHC, CMMC, and BHS)

**(Avoidance And Recovery Of Fraudulent Transfers Made Without Reasonably Equivalent Value Pursuant To § 3575(B) Of MUFTA And § 544(b) Of The Bankruptcy Code)**

91.    Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 90 set forth above in this Complaint.

92.    The Note Transfers, ASA Transfers, Other CMHC Transfers, 2013 RE Transfer, CMMC Transfers, and BHS Transfers were made without Parkview receiving reasonably equivalent value in exchange for such transfers or obligations.

93.    Upon information and belief, at the time of the foregoing transfers, Parkview either (A) was engaged or was about to engage in a business or transaction for which Parkview's remaining assets were unreasonably small in relation to such business or transaction, or (B) intended to incur, or believed or reasonable should have believed that it would incur, debts beyond its ability to pay as the debts became due.

WHEREFORE, the Debtor respectfully requests that the Court (a) determine that the CMHC Transfers, the 2013 RE Transfer, the CMMC Transfers, and BHS Transfers were fraudulent transfers within the meaning of § 3575(1)(B) of MUFTA; (b) award damages to Parkview in the amount of twice the value of such transfers, an amount not less than $30 million, pursuant to § 3578(1)(C)(3) of MUFTA and § 550(a) of the Bankruptcy Code; (c) in addition, or in the alternative to an award of damages with respect to the 2013 RE Transfer, avoid the 2013 RE Transfer; (d) order CMHC and CMMC to pay Parkview's attorneys' fees and costs in connection with this claim; and (e) grant such further and additional relief as the Court deems just and proper.

## COUNT X

### (Debtor v. CMHC)

### (CMHC Breach Of Fiduciary Duties And/Or Negligence As CEO Of Parkview)

94.     Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 93 set forth above in this Complaint.

95.     From and after execution and delivery of the ASA, CMHC was CEO of Parkview.

96.     As such, CMHC had statutory and common law fiduciary duties to Parkview, including those duties set forth in § 720(1) of title 13-B of the Maine Revised Statutes.

97.     CMHC breached such duties including, without limitation, by (1) permitting and/or causing Parkview to make the transfers to the CM Entities alleged in this Complaint, at times when Parkview was insolvent, unable to pay its debts as they became due, and/or undercapitalized; and (2) engaging in self-dealing transactions that were not fair or entirely fair to Parkview.

98.     The self-dealing transactions engaged in by CMHC, and referred to above, include, without limitation, seeking extensions of the Note that were not on terms fair or entirely

fair to Parkview; taking corporate opportunities for itself, including by hiring physicians affiliated with Parkview and then closing such physician practices at Parkview; and/or by restricting and stymying the growth and development of Parkview to CMHC's benefit and Parkview's detriment.

WHEREFORE, the Debtor respectfully requests that the Court (a) determine that the CMHC breached its fiduciary duties and/or was negligent; (b) award damages to Parkview for such breaches; and (c) grant such further and additional relief as the Court deems just and proper.

## COUNT XI

## (Debtor v. CMHC, CMMC, and BHS)

## (Declaratory Judgment That Certain Transactions With CMHC, CMMC, And BHS Were Void *Ab Initio* And/Or Conflict-Of-Interest Transactions For Which CMHC, CMMC, And BHS Are Liable)

99.    Parkview repeats and realleges, as if set forth fully herein, each and every allegation of paragraphs 1 through 98 set forth above in this Complaint.

100.    Under § 721(1) of title 13-B of the Maine Revised Statutes:

The funds or assets of a public benefit corporation may not be transferred or applied and a director or officer of a public benefit corporation may not authorize the transfer or application of funds or assets of the public benefit corporation if:

A. The transfer constitutes a conflict-of-interest transaction that is neither fair nor properly approved as determined under section 718;

B. The transfer misapplies the funds or assets in violation of statute, including conversion transactions in violation of Title 5, sections 194-C to 194-H; [or]

C. The transfer is to a director or officer of the public benefit corporation or to another person in a position to exercise substantial influence over the affairs of the corporation and constitutes private inurement or excess benefits that exceed the fair market value of the property or services received in return[.]

101.    Parkview was at all times relevant to this Complaint a public benefit corporation.

102.    At and at all times after the time of the 2008 Loan, CMHC was a "person in a position to exercise substantial influence over the affairs of the corporation [Parkview.]"  As affiliates of CMHC, CMMC and BHS also were "person[s] in a position to exercise substantial influence over the affairs of the corporation[.]"

103.    At and after the time the ASA was executed and delivered, CMHC was an officer of Parkview.

104.    Any and all transfers by Parkview to CMHC and/or CMMC and/or BHS after the 2008 Loan were transfers in violation of § 721(1), in that, without limitation, (1) they were conflict of interest transactions, that were neither fair nor properly approved; and/or (2) they were transfers to or for the benefit of an officer or other person in control and such transfers constitute private inurement or excess benefits that exceed fair market value.

WHEREFORE, the Debtor respectfully requests that the Court (a) determine that the 2008 Loan, the ASA, and other agreements entered into after the 2008 Loan are void *ab initio* pursuant to § 721(1) of title 13-B of the Maine Revised Statutes; (b) determine that the CM Entities are liable for all payments or the value of transfers received by them and order the return of such payments or the value of such transfers; (c) determine that transfers of the administrative fee under the ASA and/or BSMA were conflict-of-interest transactions that were not fair to Parkview for which CMHC is liable and order CMHC to pay damages to the estate of the Debtor in the amount of such transfers; and (d) grant such further and additional relief as the Court deems just and proper.

Dated:  July 22, 2015                           /s/ George J. Marcus
                                                George J. Marcus
                                                Lee H. Bals
                                                Jennie L. Clegg
                                                David C. Johnson
                                                Andrew C. Helman

                                                MARCUS, CLEGG & MISTRETTA, P.A.
                                                One Canal Plaza, Suite 600
                                                Portland, ME  04101
                                                (207) 828-8000

                                                Counsel for Parkview Adventist Medical Center